Chief Justice Robertson,
delivered the opinion of the Court,
In 1804, Matthew Walton published his last will which was never altered, revoked or republished, (though he lived until 1819, and in the mean time greatly increased his estate,) and by which he devised to some of his collateral relatives some specific legacies, and all the residue of his estate, real and personal, after payment of debts, to his wife.
The testator died without issue ; and his widow ■afterwards intermarried with John Pope. This suit in chancery is prosecuted by his heirs against Pope and wife for a decree against them for the lands and slaves to which the testator was entitled at his death, and which he did not own at the date of his will. The circuit court dismissed the bill; and the only question for this court to decide is, whether, on the’ facts which have been stated, the decree is right.
From the Norman conquest to the reign of H. VIII. land was not devisable, except in particular *59 places where custom authorized it. A statute of H. VIII. authorized persons having title to land to dispose of two thirds thereof by will. A subsequent statute of Charles II, authorized an alienation of the entire" interest by will.
Under the sta. tute of H. VIII. a person could dispose of no more hind by his will than he had title to at the date of the will.
English doctrine was that, as to land, a will spoke at its date, but as to personalty it spoke at testator’s death.
In England, an express devise of land which should be thereafter acquired, would not pass land acquired after the date of the will.
In this country, land acquired alter the publication of the will, may be made to pass by it.
Whether land acquired after the publication of a will «hall pncs (he whole will. quoiti n of be s.-iv.'d by ftruo.mn of
*59 A statute of Virginia, substantially reenacted in this state in 1797, (II Dig. 1242,) extended the testamentary power to all interests which the testator might have in land at his or her death. As the statute of H. VIII. was construed as restricting the right of devising land to such an interest only as the testator had at the date of the will, titles subsequently acquired could not pass in England, even though the testator had attempted to devise all the interests to which he might he entitled at his death. The British doctrine therefore was, that,.as to land, the will spoke at its date, though, as to personaly, it spoke at the testator’s death. Consequently, a general devise of all the testator’s estate comprehended all the chattels to which he was entitled at his death, though such devise, or even an express devise of after-acquired land, was not permitted to embrace any freehold interest in land acquired after the date of the will. And although in this country, in consequence of the statutes which have been cited, land acquired after the publication of the will may be made to pass by it, the supreme court of the United States, in the case of Smith et al. vs. Edrington, (VIII Cranch, 66,) decided that a will cannot have such an operation unless it shall clearly shew that such was the intention of the testator.
Since the enactment of the statute authorizing a devise of after-acquired land, the true doctrine seems to be, according to a proper construction and application of the opinion in Smith et al. vs. Edrington, that whether land acquired after the publication of the will shall pass by the will or descend to the heirs, is a question of intention, to be solved by a proper construction of the whole will. If, from the will itself, it shall appear more reasonable to inferan intention that after acquired land should pass by it, than that it should remain undevised, then it would pass by the will; otherwise, if the contrary intentention shall seem more reasonable, the land will *60 descend. And, according to the case in VIII Oranch, if there be nothing in the will to lead to the one deducl'ton rather than to the other,land, acquired by the testator after its publication should descend as estate undevised.
if from the will itself it rensonabl°rto inier an inton lion (hat aflam^ouM pass by it, than that it niuícTisíii™” ~ ’ then it shall pass by the will ; otherwise, if the contrary intention shall seem more reasonable, the land will descend.
real estate, a Since ac( of 1800, which makes slaves 21 years of age cannot deviso a slave
passlund will not pass a slave. Since act of 1800, w hic.h makes slaves real estate,a will that would not
Since aoi of 1800, a devisee of a slave takes omler (he will in the. first instance, just as a de> of land takes anil holds land do vised.
*60 Whatever may be the effect of the will in this as to the land claimed by the appellants we are satisfied the slaves born after the date of the will passed by it to Mrs. Walton.
1st. The statute of 1800 (II Dig. 1247,) did not alter the pre-established mode of construing a devise of slaves. That statute declares that, “ slaves, so far as respects last wills and testaments, símil iiereafter, within this commonwealth, be held and deemed as real estate, and shall pass by the last will and testament of persons possessed thereof, in the same «liinncr a»d under the same regulations as landed property, and nothing contained in the act entitled “an act to reduce into one the several acts concerning distribution of intestates’ estates, and the duty of executors and administrators,” or in the fourth section thereof, which enables persons above the age of eighteen years to dispose of their chattels by will, shall be construed to contravene this act.”
Notwithstanding this act slaves are still, for most purposes, deemed personal estate. The effect of the act is, that, since its passage, a person under twenty one years of age cannot devise a slave • that a will that would not pass land will not pass a slave, and that the devisee of a slave will take under the will, in the first instance, just as a devisee of land would ta]j_e all<i hold ianc[ devised. This is the whole op-oration of the statute. Jrrior to Us enactment, a gen* eral devise of all the testator’s slaves would have passed such as may have been acquired after tbe publication, because, its to staves as well as other chattels, the will spoke at the testator’s death. The statute has not changed this rule of construction. Prior to the statute of 1800, a testator, when ho made a general devise of all his slaves, was presumC({ to have intended all that he might own at his •,__.. ° death. .
There is nothing in the statute which should dc-feat, or was designed to oppose, that legal presump *61 lion. The statute does not declare what slaves shall pass by will, but only prescribes how such as do pass shall be devised, by whom, and how they shall be held by the devisees. A general devise of slaves, without restriction, must now, as before 1800, he considered as speaking at the death of the testator, there being nothing in the will tenelín» to shew a contrary intention
N'ltwilhstnnd ing the act of 1800 has made slaves real estate, a genera] devise of slaves will pass all those which the (estator has at his death.
General devise of slaves will be considered as sneaking at the death of the testator, notwithstand iner the act of 1800 makes slaves ical estate.
The case of Mason vs. Mason’s Executors (III Bibb, 448,) does not, as was supposed in argument, contain any intimation inconsistent with this view. In that case, fifteen slaves were devised by name, and, of course, other slaves, afterwards acquired, could not have been embraced in such a specific devise. As to such slaves, the court said in that case, that “ there is no general provision from ivhich the testator's intention to dispose of them can possibly be inferred thus clearly intimating that they might have passed by the will of the testator, had he made a “general devise” of all his slaves.
We are, therefore, of opinion, that all the slaves owned by the testator at his death passed by his will to his wife.
2nd. Even if after-acquired slaves do not pass by a general devise, still there is enough, wc think, in this case to shew that the testator intended that all the slaves that he owned at his death should go to his wife, and he emancipated at her death, if she should concur in his wish to that effect.
It seems that he owned, at his death, no slaves except those whom he owned at the date of his will, and their after-born issue. Hence it is but reasonable to infer, that he desired that the children, as well as their mothers, should be free. Such a construction is fortified by the maxim, that courts should lean “ injetvorem libertatis.''
We are, therefore, clearly of opinion, that the appellants have no right to any of the slaves.
As to the lands claimed in the lull, there is no allegation or prayer which gave the circuit court jurisdiction to decide to whom they belong. If they did not pass by the will, they descended to the heirs, and they would, in that event, have had a *62 complete legal remedy for recovering possession oí them They have not prayed for partition. Their bill seems not to have been drawn with any such view, or for any such purpose. The only point submitted for decision was the effect of the will. The answers denied that the circuit court had jurisdiction ; and there is neither allegation nor proof that either of the appellees is, or was, in possession of the land.
Monroe and Rucld for appellants ; Richardson, Mills and Brown for appellees.
It was proper, therefore, to dismiss the bill for want of jurisdiction to make any decree establishing the right to the lands. We shall not, therefore, intimate whether the general devise of estate, real and personal, and the charge of debts on the whole, should be construed as including all the lands as well as slaves owned at the testator’s death.-The dismissal of the bill will not bar any suit at law to try the title to the land.
Decree affirmed.